**JOSHUA L. DRATEL, P.C.**
A PROFESSIONAL CORPORATION

**29 BROADWAY**
Suite 1412
NEW YORK, NEW YORK  10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL                                                                                STEVEN WRIGHT
—                                                                                                      *Office Manager*
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

June 9, 2016

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:       *United States v. Echeverria (Jonathan Harris)*,
S2 15 Cr. 445 (PAE)

Dear Judge Engelmayer:

This letter is submitted on behalf of defendant Jonathan Harris, whom I have been appointed to represent in the above-captioned case, and constitutes his application for pretrial release pursuant to 18 U.S.C. §3142.  For the reasons set forth below, it is respectfully submitted that Mr. Harris should be released on an unsecured Personal Recognizance Bond ("PRB") upon the following conditions:  (1)  the PRB be co-signed by ten relatives and family friends of his, all of whom are employed;  (2)  electronic monitoring;  and (3)  any other conditions the Court deems appropriate.

I have spoken with Assistant United States Attorney James McDonald, and he informs me that the government opposes this application.  The government also requests one week to submit a response (to which Mr. Harris does not object).  It is respectfully requested that the Court set a date for a hearing on the matter as soon thereafter as practicable, preferably on a Monday or Wednesday (due to the schedules of some of Mr. Harris's proposed co-signers).

As detailed below, the reasons why Mr. Harris should be granted pretrial release include:

(1)       Mr. Harris self-surrendered to authorities after learning that he was named in the Indictment in this case (and within two days of the arrests of his co-defendants);

(2)       Mr. Harris does not have any prior convictions;

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 2 of 15

(3)     Mr. Harris's age – he is only 20 years old – and background warrant pretrial release, particularly under the strict conditions available for the Court to impose;

(4)     the ten proposed co-signers, all close relatives and friends of Mr. Harris, are all financially responsible persons employed predominantly by New York City, Bronx Lebanon Hospital, and/or other municipal or governmental institutions;

(5)     the length of time Mr. Harris would be confined before trial commences for him constitutes, in effect, "sentence before verdict;"

(6)     the evidence with respect to the most serious allegation against Mr. Harris is weak, and the remaining charges include one crack cocaine sale that is *dis*proven by the discovery already provided by the government, and small sales of marijuana;  and,

(7)     statistics confirm that an alarmingly high number of defendants remain detained because, despite being granted pretrial release, they cannot afford the bail ordered due to scarce financial resources.  That situation is both unjust and unfair, and there is growing recognition that it is inappropriate.  As a result, the inability of Mr. Harris and/or his family to post any property or other financial component of bail should not be a barrier to his pretrial release, or the setting of appropriate alternative conditions therefor.

Mr. Harris is charged in three of six counts in the current Superseding Indictment (S2):  a racketeering conspiracy in violation of 18 U.S.C. § 1961, a narcotics conspiracy in violation of 21 U.S.C. § 846, and a firearms charge in violation of 18 U.S.C. § 924(c)(1)(A)(iii).[1]  Although these charges give rise to a presumption in favor of detention pursuant to 18 U.S.C. §3142(e), that presumption is rebuttable.  *See* 18 U.S.C. § 3142(e)(3)(A) & (B).

Accordingly, it is respectfully requested that the Court release Mr. Harris pending trial based on the factors outlined in § 3142(g) and discussed below, and because there exist conditions of release which will reasonably assure Mr. Harris's appearance and the safety of the community, and which overcome the presumption against release in Mr. Harris's case.

---

[1]  As the Court is aware, presently the government has not provided information whether or not Mr. Harris will face additional charges in any subsequent superseding indictment.  Nor do I have any information that any such charges that might include violence would in any manner include Mr. Harris.

LAW OFFICES OF

**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 3 of 15

## I.  *The Legal Standards Regarding Pretrial Release*

The statute governing pretrial release, 18 U.S.C. §3142, strongly favors pretrial release and thus vindicates the foundational tenet of American criminal justice:  the presumption of innocence.  *See e.g. United States v. Hall*, 651 F. Supp. 13, 15 (N.D.N.Y. 1985) ("[t]hese presumptions do not change the fundamental presumption that the accused is innocent until proven guilty").  Therefore, when balancing the arguments and evidence for and against pretrial release, any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant."  *Id*., *citing Herzog v. United States*, 75 S. Ct. 349, 351 (1955) (Douglas, J., in chambers).

Pretrial release is warranted when conditions of release exist that would "reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. §3142(c)(1).  The statute directs that, in determining whether an application for release should be granted, the Court consider:

(1)  "the nature and circumstances of the offense charged;"

(2)  "the weight of the evidence against the person;"

(3)  "the history and characteristics of the person including –

    (A)  the person's character, physical and mental condition, family ties, . . . financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;"  and

(4)  "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*See* 18 U.S.C. §3142(g).

When the Court finds probable cause to believe the defendant has committed one of the offenses listed in § 3142(e)(3), a rebuttable presumption in favor of detention arises.  *See* 18 U.S.C. § 3142(e)(3).  The Indictment itself, by definition, establishes that probable cause.  *See United States v. Rodriguez*, 950 F.2d 85, 87 (2d Cir. 1991).

However, this presumption merely imposes on the defendant a "limited burden of production – not a burden of persuasion – to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight."  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001);  *see also United States v. Green*, No. 92 CR 159C, 1992 WL 211400, at *1 (W.D.N.Y. July 27, 1992) (defendant must "introduc[e] some evidence

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 4 of 15

contrary to the presumed fact").

In order to rebut the presumption of danger or flight, the defendant "need not necessarily show [he is] not guilty of the charged crimes . . . [but] that the specific nature of the crimes charged, or that something about [his] individual circumstances, suggests that 'what is true in general is not true in this particular case.'" *Green*, 1992 WL 211400, at *2, *quoting United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). As such, "[a]ny evidence favorable to a defendant that comes within a category listed in 3142(g) can affect the operation of . . . the presumption." *Id*.

Consequently, while the presumption remains "a factor to be considered among those weighed by the district court," the government "retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," and " by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *Mercedes*, 254 F.3d at 436.

Accordingly, regardless whether the presumption arises, *all* of the factors included in §3142(g) apply, and before imposing detention a court must conclude that the risk of flight or danger to the community cannot be reasonably alleviated by imposing conditions of release upon the defendant. *See* 18 U.S.C. § 3142(f)(2)(A)-(B) & § 3142(c)(1)(B).

II.   ***Analysis of the Relevant Factors Demonstrates That Mr. Harris Should Be Granted Pretrial Release***

As detailed below, there exist several factors which establish that conditions of release exist that will overcome the presumption against release, and reasonably assure Mr. Harris's appearance and the safety of the community.

A.   ***Mr. Harris Voluntarily Surrendered to Authorities***

After learning of his inclusion in the Indictment in this case, and within two days of the arrests of his co-defendants, Mr. Harris voluntarily surrendered himself to authorities December 11, 2016. Mr. Harris's surrender was arranged through a Bronx Legal Aid Society lawyer, Holly Robertson, who had represented him in a prior New York State case in which Mr. Harris had been acquitted of the charges. Ms. Robertson was contacted by Mr. Harris, who had read the U.S. Attorney's Office's press release online (which named him, and listed the charges and potential penalties), and expressed his wish to surrender to authorities and face the charges.

Ms. Robertson contacted Assistant United States Attorney Samson A. Enzer December 10, 2016, and they arranged Mr. Harris's surrender the following day in the Bronx parking lot outside the law enforcement task force's offices in Westchester Square. Mr. Harris was

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 5 of 15

accompanied by his mother, grandmother, and one of his uncles, as well as Ms. Robertson.  Mr. Harris's arrest was effected in the parking lot without incident.  The arresting agents permitted him to remove certain clothing (to give to his family members), and to hug his family members. Ms. Robertson was permitted to accompany Mr. Harris throughout the processing procedure.

Mr. Harris's self-surrender, regardless of the potential consequences of a conviction, constitutes a powerful rebuttal not only to the presumption against release, but also with respect to any other factors weighing against release in this case.  *See e.g. United States v. Oliver*, 2016 WL 1746853, at *9 (W.D. Pa. May 3, 2016) ("[c]ourts have found that facts underlying a defendant's voluntary surrender to authorities may support positive inferences in a defendant's favor that he is unlikely to flee and will appear when required").

Given the rarity of self-surrender in federal prosecutions such as this one, and in particular in which there has not been prior contact or negotiation between the government and defense counsel during the course of an investigation, Mr. Harris's voluntary surrender to authorities within days of learning of not only the charges against him, but also that the maximum penalty for each charge is a life sentence,[2] indisputably distinguishes his case from the norm, and sufficiently rebuts the presumption of a risk of flight.  *See United States v. Fiandor*, 874 F. Supp. 1358, 1361 (S.D. Fla. 1995) ("[a] defendant's voluntary surrender undoubtedly is probative of whether he or she presents a flight risk");  *see also* Mark Motivans, *Federal Justice Statistics: 2012 – Statistical Tables*, U.S. Department of Justice Office of Justice Programs, Bureau of Justice Statistics, at 8, Table 1.6 (January 2015) (of 189,699 warrants cleared between Oct. 2011 and Sept. 2012, only 7,385 [3.3%] were self-surrender), available at <http://www.bjs.gov/content/pub/pdf/fjs12st.pdf>.

Also, evidence demonstrating an individual's willingness to abide by the "variety of conditions that could reduce potential danger and flight" informs the "quintessential factor . . . whether the court can rely on a defendant's good faith promises" to comply with the conditions of release.  *United States v. Barnett*, No. 5:03 CR 243 (NAM), 2003 WL 22143710, at *12 (N.D.N.Y. Sept. 17, 2003).  Mr. Harris's decision to self-surrender certainly reflects good

---

[2] As noted **ante**, Mr. Harris discovered that he was charged in the Indictment after searching online and finding a government press release which provided a chart of the charges against each defendant and the maximum available penalty for each count in the Indictment.  *See* "48 Members And Associates Of 2 Rival Bronx Street Gangs Charged In Federal Court With Racketeering Offenses, Including 3 Murders, Narcotics Trafficking, And Firearms Offenses," Southern District of New York, United States Attorney's Office Press Release (December 9, 2015), available at <https://www.justice.gov/usao-sdny/pr/48-members-and-associates-2-rival-bronx-street-gangs-charged-federal-court-racketeering>.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 6 of 15

character and compliant disposition, and thus provides a sound basis for presuming his conformity with any conditions of release imposed by the Court.

In addition, the involvement of his family members in encouraging and supporting Mr. Harris's decision to surrender – and their attendance at his presentment (as well as at subsequent court proceedings) – adds to the important element of moral suasion in the context of pretrial release. *See United States v. Batista*, 163 F. Supp. 2d 222, 224-26 (S.D.N.Y. 2001) (discussing "moral suasion" in the bail context and noting that the "[a]ppropriate factors to consider when weighing whether a proposed suretor exercises moral suasion . . . may include the strength of the tie between the suretor and defendant . . . , the defendant's roots in the community, and the regularity of contact between suretor and defendant," and also emphasizing the role of moral suasion in cases which "raise[] difficult questions regarding the viability of economic coercion as a means of assuring a defendant's appearance . . . where [he and his family] are of limited means").

Accordingly, in addition to firmly rebutting the presumption that Mr. Harris constitutes a flight risk, his decision to surrender voluntarily to authorities is similarly probative of his willingness to submit to any conditions the Court deems necessary to reasonably assure the safety of the community.

**B.     *Mr. Harris Has Never Been Convicted of a Crime***

Mr. Harris does not have any prior recorded convictions, and although he has three pending New York State cases (at least one of which may be directly related to the conduct alleged in this case),[3] none of the arrest charges involved violent conduct. Nor is there any evidence in the discovery that Mr. Harris has a violent nature at all.

---

[3] Although the discovery contains additional police reports which indicate that Mr. Harris has been arrested previously, all of the arrests have subsequently been sealed, and do not appear in any form on Mr. Harris's rap sheet. In that context, Mr. Harris has instituted two lawsuits – one pending and one resolved via monetary settlement – against the City of New York and New York City Police Department officers, and both involving the 40th Precinct, which is the locus of this case as well – for incidents involving false arrest(s) and excessive force. *See Wilson, et al. v. City of New York, et al.*, No. 1:14-cv-09326 (S.D.N.Y. 2015); *Harris v. City of New York, et al.*, 15 Civ. 8456 (CM). Unsurprisingly then, Mr. Harris falls squarely within the targeted population of young men of color in New York City that have a significant arrest record without the correspondingly significant criminal record. *See e.g.* "Stop and Frisk Data," NYCLU, (between 2011 and 2015, regardless of the number of people stopped in NYC, which dropped from almost 700,000 in 2011 to less than 25,000 in 2015, at least 80% were innocent and more than half were black), available at <http://www.nyclu.org/content/stop-and-frisk-data>.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 7 of 15

In addition, information related to these three arrests does not reveal that he has failed to appear or comply with court orders.  *See United States v. Vasconcellos*, 519 F.Supp.2d 311, 317-18 (N.D.N.Y. 2007) ("an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis").   In fact, with respect to the pending September 9, 2015, drug charge in St. Lawrence County, New York, Mr. Harris was released on bail.

A defendant's spare criminal history, particularly in combination with a history of compliance with court directives, is undoubtedly a factor favoring release, and, in combination with the other factors discussed herein, overcomes the presumption against release and supports a finding that  conditions exist to reasonably protect against any risk of flight or danger to the community.  *See United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (defendant's lack of criminal history is "a factor weighing in his favor").

      **C.**    *Mr. Harris, Who Has Lived in New York City For His Entire Life, Is Only 20 Years Old, Comes from a Very Close-Knit Family, and Has Spent a* **De Minimis** *Amount of Time In Jail*

Mr. Harris is 20 years old, was born in Manhattan, and growing up split his time between Manhattan and the Bronx, living with his grandmother and his mother.  Mr. Harris has three younger siblings:  a 17-year old brother, an eleven-year old brother and a seven-year old sister. He is extremely close to his family, particularly his grandmother, who suffered a serious illness early last year, and slipped into a coma lasting more than a month.  Mr. Harris helped to care for his grandmother while she recovered, and continues to be concerned for her health.  He has also been in a stable relationship with his girlfriend for six years.  As set forth **post**, numerous members of his family, as well as close family friends, are willing to sign a PRB to secure Mr. Harris's release.

Several family members have appeared at each of the court appearances in this case, including the initial presentment, and Mr. Harris's family remains fully supportive of him. Thus, Mr. Harris has a powerful incentive to remain in New York, and abide by any conditions of release the Court might impose.

Mr. Harris's youth also militates in favor of pretrial release due to the vulnerability of young, inexperienced inmates in prison settings.  As noted **ante**, Mr. Harris has never been convicted of a crime, and has spent only a few nights in jail in his life.  As a result, his youth and inexperience, both great disadvantages in a prison environment, favor pretrial release.  *Cf. United States v. Lara*, 905 F.2d 599 (2d Cir. 1990) (affirming downward departure at sentencing based on the vulnerability of particularly youthful looking individuals in a prison environment).

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 8 of 15

Until his arrest in December 2015, Mr. Harris lived with his grandmother in Manhattan. If released pretrial, Mr. Harris would reside with her in her apartment at 1115 FDR Drive (near 11th Street), a significant distance from the locus of the criminal activity alleged in the Indictment (The Bronx). Moreover, although his family members are all hard working and financially responsible persons employed in New York City, they do not have economic means to finance Mr. Harris's flight. Nor does he possess such ability independently.

Accordingly, Mr. Harris has significant ties to New York and New York alone. Indeed, it is the only home he has known. Nor would he have anywhere to flee, or the financial or logistical means to do so. Thus, he does not present a "risk of flight."

   **D.**      ***Ten of Mr. Harris's Family and Close Friends Are***
            ***Available to Sign a PRB as Financially Responsible Persons***

Several members of Mr. Harris's family and close family friends are available as Financially Responsible Persons ("FRP's"), and are prepared to sign a PRB to secure Mr. Harris's release pending trial. Many of those family hope to be present at the bail hearing (depending on their work schedules and responsibilities). The numerous willing individuals include Mr. Harris's mother, grandmother, aunt, uncles, girlfriend, godparents, and family friends.

Mr. Harris's mother, Latasha Pizarro, is a dietary worker at Bronx Lebanon Hospital, and his grandmother, Angela Pizarro, is a patient representative at Mount Sinai Beth Israel Hospital. His uncle, Ollie Pino, is a caretaker with the New York City Housing Authority, and his uncle Cory Campbell is a safety supervisor in the New York City Shelter System. Mr. Harris's aunt, Charisma Mitchell, works as a medical assistant at a doctor's office in Manhattan. Mr. Harris's godfather, Gerald Turner, is a maintenance worker at Concourse Village. Mr. Harris's godmother, Aminah Caines, works for Citarella as a customer service representative. Two family friends, Elsie Espinal and Reginald Dozier, both dietary workers at Bronx Lebanon Hospital, have also volunteered to sign a PRB. In addition, Mr. Harris's girlfriend, Angelica Pereyra, works as a sales representative for Hertz.

Mr. Harris's family has attempted to identify and/or locate any assets that could be pledged as security for a PRB. However, such assets do not appear to exist. As a result, Mr. Harris proposes as many FRP's as the Court believes are necessary to secure a PRB.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 9 of 15

      **E.**    *Sufficiently Stringent Conditions of Release Are Available*
         *to Reasonably Assure Both Mr. Harris's Appearance at*
         *Future Court Proceedings, and the Safety of the Community*

A wide variety of strict and effective conditions are available to the Court to reasonably assure Mr. Harris appearance at future court proceedings, and the safety of the community.  For example, electronic monitory and home confinement can capably restrict Mr. Harris's movements.  In addition, regular drug testing and frequent reporting to Pre-Trial Services can also aid in assuring compliance.

The moral suasion that will also be exerted by the commitment of his family and friends to a PRB – essentially making them guarantors of Mr. Harris's compliance – is also present in abundance in this case.  Mr. Harris's youth, his close relationship with multiple generations of his family, and his reliance on them for shelter, finances, and emotional support, makes that element particularly strong here.

Mr. Harris is also amenable to any other conditions and/or programming the Court deems necessary for his pretrial release.

      **F.**    *Mr. Harris Has Been Detained For Six Months Already,*
         *and Faces the Prospect of Very Lengthy Pretrial Confinement*

Mr. Harris was "arrested" December 11, 2015, upon his surrender described **ante**, at 4-5, and has been confined at the Metropolitan Correctional Center ("MCC") since.  Thus, Mr. Harris has been detained for six months already, with the prospect of an additional lengthy pretrial period.  As the Court is aware from my May 5, 2016 (Docket # 207), letter, I am not available to try this case October 24, 2016, and it is unclear when any second group of defendants might be proceeding to trial.

It is respectfully submitted that the period of detention already served, in addition to the prospect of such a lengthy additional period of pretrial confinement, fails to conform with the Due Process requirement that the non-punitive "alternative purpose to which [the detention] may rationally be connected is assignable for it, and [is not] excessive in relation to the alternative purpose."  *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000);  *see also United States v. Gonzales Claudio*, 806 F.2d 334, 339 (2d Cir. 1986) ("at some point and under some circumstances, the duration of pretrial detention becomes unconstitutional").

Nor is the delay attributable to Mr. Harris.  Rather, it is the product of the size of the case generally (a factor within the government's charging discretion), the attendant volume and timing of discovery, the advent of a superseding indictment (again, within the government's purview), and counsel's pre-existing trial schedule, all of which are outside of Mr. Harris's control.  Yet he

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 10 of 15

alone is suffering as a result.

The inequity and Due Process implications of Mr. Harris's detention for the anticipated period of pretrial preparation are aggravated by the relative weakness of the case against him with respect to the most serious offenses (the violence and firearms charges, as well as the allegations of crack cocaine sales) – discussed **post**, at 10-11 and his relative position in the alleged structure of the charged enterprise and its activities.

In that context, if a conviction were limited to the drug charges for which he is personally responsible, Mr. Harris could very well serve even a Guidelines sentence by the time trial is concluded, evoking the capriciousness of *Alice's Adventures In Wonderland*: "sentence first – verdict later." Lewis Carroll, *Alice's Adventures In Wonderland* (1865). Here, the only means of avoiding that injustice is pretrial release for Mr. Harris pursuant to the very strict conditions proposed **ante**, at 8-9, and any others the Court sees fit to impose.

Moreover, there is ample evidence to overcome the presumption against release, and insufficient evidence to conclude that conditions of release do not exist to protect the community and ensure Mr. Harris's compliance with court orders. *See United States v. Khashoggi*, 717 F.Supp. 1048, 1051 (S.D.N.Y. 1989) ("traditional notions of due process cannot countenance protracted pretrial detention of an individual presumed innocent").

Accordingly, Mr. Harris's pretrial confinement has already been of substantial duration, and continued detention for the estimated remaining period until trial is certainly unreasonable "in relation to the regulatory goals of detention[.]" *See United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993). Consequently, his continued detention denies him Due Process.

### G.  *The Evidence Against Mr. Harris Is Not of a Character That Would Provide Him Incentive to Flee, or Demonstrate That He Is a Danger to the Community*

Although the Indictment charges that Mr. Harris participated in a violent racketeering and narcotics conspiracy, the evidence purporting to incriminate Mr. Harris in the most serious charges – the attempted murder, the related firearms possession, and the sales of crack cocaine – is either non-existent or demonstrably the opposite.

For example, with respect to the predicate act alleging attempted murder, Overt Act (n) in Count One, at ¶ 7(n) of the current Superseding Indictment, the government has not produced *any* discovery – neither physical evidence, nor forensic evidence, nor video or audio recordings – in connection with that alleged event. The absence of such evidence, even after the government's most recent production, which included discovery related to five separate alleged acts of violence (and two additional instances of weapons possession) charged against others strongly suggests – as does the vague allegation itself:  that the shooting (which did not result in any injury) allegedly

LAW OFFICES OF

**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 11 of 15

occurred in "August or September 2014" – that the sole evidence is a rather distant and non-specific retrospective account by a cooperating witness (or witnesses), traditionally the least reliable source. The same analysis applies to the charge in Count 6 that Mr. Harris used a firearm in connection with the alleged racketeering conspiracy.

Regarding the drug charges, while the discovery contains multiple complaint reports documenting controlled buys involving a seller named "Paulie," alleged by the government to be Mr. Harris, these sales uniformly involve small amounts of marijuana. Indeed, the complaint reports, as well as the audio and video recordings produced in discovery establish that on more than one occasion "Paulie" informs the Undercover Officer ("UC") that he ("Paulie") does *not* sell crack cocaine. The only report, dated April 2, 2015, indicating that the controlled substance exchanged was crack, as opposed to marijuana, clearly states that "Paulie" left the scene almost immediately, before the UC made any request for crack cocaine, and that the transaction involved "DJ," a completely different seller.

Consequently, the nature of the evidence is not of a character that would motivate Mr. Harris to flee to avoid the likelihood of an onerous penalty, already improbable based on the other factors discussed **ante** (particularly his decision to self-surrender and his close ties to his family and the local community). *See United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988) (requiring "more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight"). Moreover, Mr. Harris's voluntary surrender to face the charges manifests that the nature of the charges or the potential penalties are not sufficient to impel him to flight.

The paucity of evidence regarding the single allegation of violence, and the essence of the remaining charges that are not contradicted by the available evidence – small marijuana sales – also establishes that the government cannot meet its burden of demonstrating by clear and convincing evidence that, if released, Mr. Harris would constitute a danger to the community. *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("government retains the burden of proving dangerousness by clear and convincing evidence even when the statutory presumption has been invoked"). In addition, electronic monitoring and home confinement at his grandmother's residence in Manhattan would cloister him far from the location of the alleged criminal conduct and gang activity charged in this case.

Accordingly, the evidence against Mr. Harris (and the absence thereof) neither provides incentive for him to flee nor demonstrates by clear and convincing evidence that he is a danger to the community.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 12 of 15

**H.    *The Staggeringly High Number of Defendants Detained Unfairly Due to Insufficient Financial Resources, Despite Being Granted Pretrial Release, Militates Strongly Against Including a Secured Financial Component of Bail***

The presumption favoring pretrial release is a deeply rooted tradition, the essential nature of which has been confirmed repeatedly by the Supreme Court:  "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

One broadly recognized flaw in the current pretrial system is the inequity that stems from the requirement, widely imposed, that release be conditioned on the defendant's satisfaction of some secured financial component.  *See e.g.* Ram Subramanian et al., Vera Institute of Justice, *Incarceration's Front Door: The Misuse of Jails in America*, Vol. 29 (2015) ("[m]oney or lack thereof, is now the most important factor in determining whether someone is held in jail pretrial"), available at <http://www.vera.org/sites/default/files/resources/downloads/incarcerations-front-door-report.pdf>.

Indeed, in *United States v. Dreier*, 596 F. Supp.2d 831 (S.D.N.Y. 2009), Judge Rakoff, in setting conditions of pretrial release, acknowledged that

> [i]t cannot be gainsaid that many kinds of bail conditions favor the rich, and, conversely, that there are many defendants who are too poor to afford even the most modest of bail bonds or financial conditions of release.  *This is a serious flaw in our system*.

*Id.*, at 833 (emphasis added).  *See also* Benjamin Weiser, "Rich Defendants' Request to Judges: Lock Me Up In a Gilded Cage," *The New York Times*, June 1, 2016, available at <http://nyti.ms/1ROI2ri> (quoting Inimai M. Chettiar, described as "a lawyer at the Brennan Center for Justice who runs an initiative to end mass incarceration" as stating "[i]t just reinforces for me the point that our entire system of pretrial detention is predominantly based on wealth").[4]

Financial conditions are imposed in approximately two-thirds of cases in which the defendant is granted pretrial release, but according to Bureau of Justice statistics, "9 in 10 detained defendants had a bail amount set but were unable to meet the financial conditions required to secure release."  Brian A. Reaves, U.S. Dep't of Justice, *Felony Defendants in Large*

---

[4]  Judge Rakoff simultaneously recognized that the problem he described is, for a person with financial means, "not a reason to deny a constitutional right to someone who, for whatever reason, can provide reasonable assurances against flight."  596 F. Supp.2d at 833.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 13 of 15

*Urban Counties, 2009-Statistical Tables*, at 15-17 (December 2013), available at
<http://www.bjs.gov/content/pub/pdf/fdluc09.pdf>.

Beyond the fundamental unconstitutionality of detaining individuals solely because they
cannot satisfy economic conditions of release, the impact of pretrial detention at every stage of a
criminal case, from the trauma of incarceration to any ultimate sentence, further compounds the
injustice of detaining individuals on the basis of something as arbitrary (and self-perpetuating
through this process) as financial status. *See e.g.* Margaret Noonan et al.*, Mortality in Local
Jails and State Prisons, 200-2013 - Statistical Tables*, U.S. Department of Justice (2015)
(concluding that "[s]uicide has been the leading cause of death in jails every year since 2000"),
available at <http://www.bjs.gov/content/pub/pdf/mljsp0013st.pdf>.

In addition, defendants incarcerated pretrial are more likely to be convicted than their
similarly situated unconfined counterparts. *See* Mary T. Phillips, N.Y. City Criminal Justice
Agency, *A Decade of Bail Research in New York City*, 115-17 (2012). Those defendants are also
more likely to receive a jail or prison sentence. *Id.*, at 115. And they are more likely to receive
longer prison or jail sentences than those who were not incarcerated pretrial. *Id. See also*
Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial Detention on Sentencing
Outcomes* (2013). *see also* Christopher T. Lowenkamp et al., *Investigating the Impact of Pretrial
Detention on Sentencing Outcomes*, at 13-17 (2013) (controlling for criminal history, offense
type and recidivism risk level, the study found that those detained pretrial were significantly
more likely to receive at least twice the prison sentence of their released counterparts), available
at
<http://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF_Report_state-sentencing_
FNL.pdf>. *See also* Laura and John Arnold Foundation, *LJAF Research Summary: Pretrial
Criminal Justice Research*, November 2013, available at
<http://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF-Pretrial-CJ-Research-brief
_FNL.pdf>.

As a result, today there is growing recognition that financial components of pretrial
release discriminate unjustifiably, that they are not in most instances the best means of assuring
compliance with the objectives of pretrial release, and that alternatives for those who cannot
afford to post money or property are effective at assuring such compliance. *See, e.g.,* Conference
of State Court Administrators, *2012-2013 Policy Paper: Evidence-Based Pretrial Release* 6-
7 (2012); Christopher T. Lowenkamp et al., *The Hidden Costs of Pretrial Detention* 11, 17-
18 (2013) (low-risk defendants detained for just 2-3 days after their arrest were found to have a
39% higher odds of being arrested for a new crime while on pretrial release, while those held 4-7
days were 50% more likely to be arrested during this pretrial period).

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 14 of 15

In turn, there is a burgeoning movement nationwide to eliminate the disparities in release that result from this form of economic injustice.  For example, Delaware Governor Jack Markell noted in a speech in 2015:

> [i]t's not working when a single mom gets stuck in detention because she can't come up with a hundred bucks and has little to no family support, but a dangerous drug dealer can get his minions to bail him out. . . . Our bail process needs to change, and it can be done, but only if we're cognizant of the full extent to which everyone involved in our criminal justice system must adjust their thinking.

Jessica Masulli Reyes, *Will Delaware end cash bail?* THE NEWS JOURNAL, Nov. 8, 2015, *available at* http://www.delawareonline.com/story/news/crime/2015/11/07/doingaway-cash-bail/74619298.

Financial release conditions are also being challenged on constitutional grounds through lawsuits in a number of jurisdictions.  For instance, in *Walker v. City of Calhoun, Georgia*, No. 4:15-cv-0170-HLM (N.D. Ga. Jan. 28, 2016) (Docket #40), the Court entered a declaratory judgment stating that "[a]ttempting to incarcerate or to continue incarceration of an individual because of the individual's inability to pay a fine or fee is impermissible . . . .  This is especially true where the individual being detained is a pretrial detainee who has not yet been found guilty of a crime."

Similarly, in *Rodriguez v. Providence Community Corrections, Inc.*, No. 3:15-cv-01048 (M.D. Tenn. Dec. 17, 2015) (Docket #68), in which financial schedules for bail were challenged, the court wrote that

> [t]he use of secured money bonds has the undeniable effect of imprisoning indigent individuals where those with financial means who have committed the same or worse probation violations can purchase their freedom . . .  The Fourteenth Amendment precludes imprisoning someone because he or she does not have enough money . . .

*Id.*, at 13.[5]

---

[5]  For a synopsis of other litigation challenging the constitutionality of certain financial conditions of pretrial release, *see* <http://equaljusticeunderlaw.org/wp/current-cases/endingthe-

LAW OFFICES OF

**JOSHUA L. DRATEL, P.C.**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
June 9, 2016
Page 15 of 15

Indeed, the American Bar Associations Standards for Criminal Justice:  Pretrial Release (3rd Ed. 2007) ("ABA Standards") bar financial conditions of release imposed to protect public safety.  *See* Standard 10-5.3(b), available at <http://www.americanbar.org/publications/criminal_justice_section_archive/crimjust_standards_pretrialrelease_blk.html>.  The ABA Standards permit imposition of financial conditions (other than an unsecured bond) only when no other release condition would "reasonably ensure" a defendant's appearance in court.  *Id.*, at 10-5.3(a).  The ABA Standards also implore judges to refrain from imposing a financial condition that "results in the pretrial detention of the defendant solely due to an inability to pay."  *Id.*

Here, such a condition for Mr. Harris would exert that very undesired effect. Consequently, it is respectfully submitted that in setting conditions of release for Mr. Harris, the practical result not be that he falls within the category of individuals unnecessarily and inappropriately detained on the basis of insufficient financial resources.

### Conclusion

Accordingly, it is respectfully requested that the Court grant Mr. Harris release pending trial on the terms proposed herein – an unsecured PRB co-signed by ten relative of Mr. Harris, electronic monitoring, and home confinement – and whatever additional stringent conditions the Court deems necessary.

Respectfully submitted,

Joshua L. Dratel

JLD/

---

american-money-bail-system/>.