*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 6, 2016

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

  Re: *United States* v. *Jonathan Rodriguez, et al.*, S4 15 Cr. 445 (PAE)

Dear Judge Engelmayer:

  The Government respectfully submits this letter in opposition to motion to quash grand jury subpoenas issued on June 24, 2016. The subpoenas at issue, sent to each of the incarcerated defendants in this case, seek disclosure of all tattoos on the person of the respective defendant. *See* Janhomi Benjamin Motion to Quash, Ex. A. In the email to defense counsel transmitting the Subpoena, the Government stated that it "intend[s] to inspect and photograph any tattoos on [the defendant's] face, arms, torso, and lower legs." *See id.* Ex. B. In addition, the Government's email explained that the Government would schedule the inspection and photographing for a time when defense counsel is available. *Id.* On June 30, 2016, defendant JAHNOMI BENJAMIN, a/k/a "Jamroc," moved, pursuant to Federal Rule of Criminal Procedure 17(c), to quash the subpoena on Fourth and Fifth Amendment grounds. Since then, a number of defendants have joined in BENJAMIN's motion. For the reasons that follow, the motion to quash should be denied.

  The Subpoena was issued in connection with an ongoing grand jury investigation into the narcotics and violent gang-related activity in the vicinity of the Patterson Houses, where 18 Park and its rival gangs operate. That investigation involves a number of murders and shootings that were committed in the vicinity of the Patterson Houses, or that were committed elsewhere by members of gangs that operate primarily in the vicinity of the Patterson Houses. The investigation also involves narcotics activity and other acts of violence—including stabbings and robberies—that occurred in the same area or by members of the same gangs. The tattoos on the defendants here may allow the grand jury to identify a perpetrator or victim in connection with the offenses at issue in that ongoing grand jury investigation. In addition, this investigation has revealed that some members of 18 Park have tattoos on their body that signify membership in the gang. Accordingly, the defendants' tattoos may be probative of their membership in the 18 Park Gang, which would also be relevant to determining whether the defendants were involved in any

of the incidents currently under investigation either as a perpetrator or a victim. Although these subpoenas—issued on June 24, 2016—were issued well in advance of the Court's superseding deadline in this case, the Government recognizes the possibility that, to the extent the photographs of the defendants' tattoos permit the grand jury to identify the defendant as the perpetrator of any uncharged offenses, the Court's trial calendar in this case may require that those additional charges be brought in a separate case.

In the event some or all of the evidence obtained as a result of the grand jury Subpoenas is relevant to the offenses currently charged in the Indictment, the Government may also seek to offer such evidence at trial in this case. But the fact that evidence sought by a grand jury subpoena is also potentially relevant to the trial of a charged offense does not render the subpoena improper. That is because a grand jury subpoena may be quashed only where trial preparation is the "sole or dominant purpose" of its issuance; the Government's potential parallel use at trial of the requested evidence is proper. *See United States* v. *Sasso*, 59 F. 3d 341, 351-52 (S.D.N.Y. 1995) (explaining that it is "improper for the government to use a grand jury subpoena for the sole or dominant purpose of preparing for trial under a pending indictment [but] [w]here there was some proper dominant purpose for the postindictment subpoena, . . . the government is not barred from introducing evidence obtained thereby"); *United States* v. *Bin Laden*, 116 F. Supp. 2d 489, 493 (S.D.N.Y. 2000) (explaining that "[i]t is certainly possible that the [requested] grand jury testimony could benefit the government in preparing for trial[,] [but] the law only permits a grand jury subpoena to be quashed where trial preparation is the sole or dominant purpose of its issuance").

In order to photograph the defendants' tattoos here, law enforcement intends to ask the defendant to remove his shirt so that his torso, arms, face, and hands can be photographed. Law enforcement will do so in a private room and with defense counsel present, if he or she wishes. This is a procedure that has been followed before in this District. *See United States* v. *Meregildo*, 876 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2012) (WHP) (approving use of grand jury subpoena to photograph defendants' arms, lower legs, and torsos for tattoos in a private room with an attorney present); *United States* v. *Carlos Lopez*, 11 Cr. 1032 (PAE), Dkt. No. 1427 at 75 (resolving motion to quash subpoena to photograph tattoos on agreement of parties that similar protocol would be followed).[1]

In moving to quash the Subpoena, the defendant principally relies on *Meregildo*, 876 F. Supp. 2d at 451-52, to assert that the Subpoena violates his Fourth Amendment rights. In *Meregildo*, however, the Court considered the very same argument the defendant here advances, and rejected it. There, the Government had issued a grand jury subpoena requiring defendants to disclose tattoos in a gang and drug case, and the defendants moved to quash that subpoena. The Court rejected the motion to quash. In reaching that conclusion, the Court began by explaining that requiring a defendant to display his arms, torso, and legs for purposes of photographing the defendant's tattoos is a Fourth Amendment search, which accordingly required an inquiry into whether that search was reasonable. *Id.* at 451. "[R]easonableness under the Fourth Amend-

---

[1] Although the Government believes it has made these limitations clear in its communications with defense counsel, if the Court directs the Government to do so, the Government would submit revised subpoenas expressly incorporating these limitations on the face of the subpoena.

ment," the Court continued, "requires 'a balancing of the need for the particular search against the invasion of personal rights that the search entails.'" *Id.* (quoting *Bell* v. *Wolfish*, 441 U.S. 520, 559 (1979)). The law enforcement need for the particular search at issue in *Merigildo* was weighty: the defendants there were "under investigation for gang and drug related activity—including multiple unsolved shootings and murders." *Id.* "The scars and tattoos on each [d]efendant may allow the grand jury to identify a perpetrator or a victim." *Id.* By contrast, the invasion of personal rights was minimal: the defendants were "required to display their arms, lower legs, and torsos so that they could be photographed in a private room with an attorney present," and the subpoena did "not require a defendant to exhibit more private parts of his or her body." *Id.* After considering this balance of interests, the Court concluded that "in the context of a grand jury investigation, this individualized suspicion is sufficient." *Id.*

Here, just like in *Meregildo*, the balance of interests weighs heavily in favor of the Government. As in *Meregildo*, the law enforcement need for the photographing of the defendants' tattoos is substantial: the Government here issued a grand jury subpoena to permit photographing of the defendant's face, arms, torso, and lower legs in connection with an ongoing grand jury investigation. Those photographs may help identify the defendant as a perpetrator or victim of the incidents currently under investigation, and they may provide evidence of gang membership that could assist the grand jury in those investigations. Furthermore, although the Court has set a superseding deadline in this case, the grand jury subpoenas issued here—on June 24, 2016—left ample time for the grand jury to consider that evidence in connection with its investigation into additional charges in this case.

By contrast, the invasion privacy by the photographing of the currently-incarcerated defendants would be minimal: the defendants would be required only to display their faces, arms, lower legs, and torsos so they could be photographed, and that would be done in a private room with an attorney present. Indeed, highlighting both the minimal intrusion of the photographing (and the reasonableness more generally), the photographing sought here is similar to the photographing of tattoos of arrestees that routinely occurs in this District and elsewhere as a part of arrest processing, conducted in the absence of a subpoena or other court-authorized search. Such photographing of arrestees' tattoos has repeatedly been affirmed as lawful. *See, e.g.*, *United States* v. *Greer*, 631 F.3d 608 612-613 (2d Cir. 2011); *Schmidt* v. *City of Bella Villa*, 557 F.3d 564, 572-73 (8th Cir. 2009). In fact, the Supreme Court recently upheld the collection of DNA from arrestees without warrant or subpoena—which is far more intrusive than merely photographing their tattoos. *See Maryland* v. *King*, 133 S. Ct. 1958, 1980 (2013). Moreover, the intrusion at issue here is particularly slight in light of the fact that the subpoenas were issued only to defendants who are currently incarcerated, and thus who have a reduced expectation of privacy under the Fourth Amendment. *See Hudson* v. *Palmer*, 468 U.S. 517, 524-525 (1984) (holding that an inmate possesses no reasonable expectation of privacy in his prison cell).[2]

---

[2] Indeed, for this reason, the Government respectfully submits that the photographing of tattoos on the face, arms, lower legs, and torso of the defendants here—each of whom is incarcerated—is not a search for Fourth Amendment purposes at all. If an inmate has no reasonable expectation of privacy in his prison cell, *see Hudson*, 468 U.S. at 525, then that inmate also should have no reasonable expectation of privacy in his tattoos, which are visible to the public and which could reveal gang affiliation or other indicators of violent activity or danger within the prison

Finally, contrary to the defendants' contentions, the defendants' Fifth Amendment rights have no bearing here. "Even assuming that the [Government's] use of the tattoo evidence was testimonial in nature . . . the tattoos were not 'compelled by the [G]overnment." *Slavin* v. *Artus*, 413 F. App'x 380, 382 (2d Cir. 2011) (quoting *United States* v. *Greer*, 631 F.3d 608, 613). Thus, the Fifth Amendment supplies no valid basis for quashing the subpoenas here.[3]

## CONCLUSION

For all these reasons, the Government respectfully submits that the motion to quash should be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:              /s/
James McDonald
Samson Enzer
Andrew Adams
Dina McLeod
Assistant United States Attorneys
Tel. (212) 637-2405

cc: All defense counsel (by ECF)

---

community. Nevertheless, whether the fact that the defendants' reduced expectations of privacy as inmates is considered in determining whether the photographing is a search, or in determining whether any such search is reasonable, the end result should be the same, and the motion to quash should be denied.

[3] Defendant KAYE ROSADO raises the additional argument that the photographs taken at the time of his arrest would reveal "that there is no reasonable possibility that the inspection of [his] body will result in the discovery of any relevant information." *See* Dkt. No. 248. The photographs taken in connection with ROSADO's arrest that are in the Government's possession reveal tattoos on the defendant's person, but are not of sufficient quality for the Government to determine the significance, if any, of these tattoos. Thus, the inspection and photographing requested by the subpoenas is necessary.