

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

January 3, 2017

**BY ECF**

Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* v. *Vincent Fielder*, 15 Cr. 445 (PAE)

Dear Judge Engelmayer:

      The defendant in this case, Vincent Fielder, is scheduled to be sentenced on January 10, 2016, having pled guilty, pursuant to a plea agreement, to participating in a racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d), and conspiracy to distribute and possess with intent to distribute narcotics, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). The Government respectfully submits this letter in advance of the sentencing and in response to the defendant's pre-sentence submission ("Def. Mem.").

      In the plea agreement, the parties stipulated that the sentencing range under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") is 100 to 125 months' imprisonment (the "Stipulated Guidelines Range), with a mandatory minimum term of imprisonment of sixty months. The U.S. Probation Office agrees that the applicable guidelines range is 100 to 125 months' imprisonment. (*See* Pre-sentence Investigation Report "PSR" at 25.) For the reasons explained herein, the Government respectfully requests that the Court sentence the defendant within the Stipulated Guidelines Range. Such a sentence would be sufficient, but not greater than necessary, to account for the factors set forth in Title 18, United States Code, Section 3553(a).

## BACKGROUND

    **A.  Offense Conduct**

      As described in the PSR dated November 18, 2016, the S4 Indictment in this case charged twenty-six members and associates of the violent street gang known as "18 Park" with participation in racketeering, narcotics, and firearms offenses between in or about 2006 and July

Honorable Paul A. Engelmayer
January 3, 2017
Page 2 of 6

2016. The PSR articulates in detail the operations of the 18 Park gang. As the PSR explains, 18 Park was a highly territorial street gang that operated primarily in the vicinity of the Patterson Houses in the South Bronx. PSR 15. 18 Park members, including Fielder, used this territory as a place to sell drugs, turning the area in and around the Patterson Houses into an open-air drug market. *Id.* Vincent Fielder played a central role in 18 Park's drug distribution business, and personally delivered drugs to customers in and around the Patterson Houses on numerous occasions.

18 Park members, including Fielder, protected the gang's territory by possessing and carrying firearms. Some of these 18 Park members committed acts of violence in connection with the gang's efforts to control its territory. Those acts of violence included assaults, shootings, and murders. To the Government's knowledge, Fielder has never personally committed any such act of violence in connection with the gang.

Vincent Fielder was one of the older members of 18 Park. Fielder was a person many of the younger members looked up to. In fact, some of the younger members joined 18 Park based, in part, on their relationship to Fielder, and the high esteem in which they held him. For some of these younger members of 18 Park, Fielder glorified gang life generally and the 18 Park gang in particular. Fielder even took some of the younger 18 Park members under his wing, and taught them how to do things valued by the gang. For example, at some point in or about 2009, Vincent Fielder took Diquinn Lacend to the roof of one of the Patterson Houses buildings, handed Lacend a firearm that Fielder had been carrying, and taught Lacend how to shoot the firearm. Fielder was approximately 23 years old at the time, and Lacend was approximately 16. Under Fielder's guidance, Lacend fired the gun off the roof of the Patterson Houses building. This was the first time Lacend had shot a gun. After Fielder taught Lacend to shoot the gun, Lacend went on to commit a number of gang-related shootings, about which he testified at trial.

In addition, Fielder was integrally involved in the gang's drug distribution activity. *See* PSR at 17-18. During the investigation's undercover purchases of narcotics, an undercover law enforcement officer bought crack cocaine from Fielder on four different occasions—from February 5, 2015 through April 2, 2015. Fielder made each of these drug deals in the Patterson Houses neighborhood, which were plagued by Fielder's and 18 Park's racketeering activities.

Honorable Paul A. Engelmayer
January 3, 2017
Page 3 of 6

### B. The Presentence Investigation Report

On November 18, 2016, the Probation Office issued the PSR in this case. The PSR calculated a total offense level of 27, and a Criminal History Category of IV, yielding a Guidelines range of 100 to 125 months' imprisonment on Counts One and Ten, with a mandatory minimum sentence of sixty months. *See* PSR 19-22, 29. This calculation is consistent with the Stipulated Guidelines Range contained in the plea agreement.

## ARGUMENT

### A. Applicable Law

The Guidelines still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall* v. *United States*, 55 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within the Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that the district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *Rita*, 551 U.S. at 349. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### B. Discussion

In this case, a sentence within the Stipulated Guidelines Range of 100 to 125 months' imprisonment is sufficient, but not greater than necessary, to accomplish the purposes of sentencing, as set forth above. Consideration of several of the Section 3553(a) factors, in addition to the advisory Guidelines, supports such a sentence.

As detailed above, the crimes committed by 18 Park members (like Fielder), are extremely serious, and wreaked havoc on a community and its residents for an extended period of time. Fielder was an integral part of 18 Park's drug-distribution business, as reflected by the quantity of drugs included in his guilty plea as well as the numerous controlled buys of crack cocaine from Fielder in and around the Patterson Houses as part of this investigation.

Fielder, moreover, helped recruit a second generation of 18 Park members to the gang. As one of the older members of the gang, Fielder is closer in age to 18 Park leaders Jonathan Rodriguez, a/k/a "Bebo," and Marquis Wright, a/k/a "Mark," than he is to many of the younger members of the gang. Yet some of the younger men who lived in the Patterson Houses looked up to Fielder, and believed that Fielder glorified membership in the gang and gang life. Diquinn Lacend, for example, had come to know Fielder through Lacend's older uncles, who were friends with Fielder. To the Government's knowledge, Lacend's uncles were not involved in gang activity. But Fielder was. Rather than following in his uncles' footsteps and avoiding gang life, Lacend followed in Fielder's and joined 18 Park. Lacend joined the gang at around the same time Fielder taught him to shoot a gun, which Fielder did on the roof of one of the Patterson Houses buildings. To be sure, a number of different factors contributed to Lacend's decision to join the gang, and to participate in the numerous shootings on behalf of the gang

Honorable Paul A. Engelmayer
January 3, 2017
Page 5 of 6

about which he testified at trial.  But one of those contributing factors was Fielder, who used his close relationship with Lacend's family to steer Lacend toward gang life.

Fielder engaged in racketeering activity, moreover, after having been convicted of several gun and drug offenses.  Two of these convictions involved possession of a loaded firearm. (Fielder ultimately pleaded both offenses down to attempted possession of the loaded firearm, *see* PSR 21-22.)  And one involved distribution of crack cocaine.  (Like his firearms offenses, Fielder ultimately pleaded this offense down to attempted possession of a controlled substance, *see* PSR 21.)  For the final offense—the 2009 gun conviction—Fielder was sentenced to three years' imprisonment.  This sentence did not deter him.  Rather, Fielder continued to engage in nearly identical conduct after his release—continuing to sell drugs with the gang in and around the Patterson area, including to the undercover officer in this case.  Fielder's previous convictions, taken together with the offense conduct in this case, suggest that Fielder has been involved in a life of crime for much of the last two decades.

In short, Fielder was a mid-level member of 18 Park, who was personally and centrally involved in 18 Park's drug distribution activity, and who possessed firearms as part of the gang and in connection with that drug distribution.  As an older member of 18 Park, younger members looked up to Fielder, and he taught at least one of them how to shoot a gun.  Fielder engaged in the offense conduct here on a consistent basis, and he lived a life of crime—including gun possession and drug distribution—going back to 2000.  The Government respectfully submits that a sentence within the Stipulated Guidelines Range of 100-125 months' imprisonment is thus reasonable, and would properly situate Fielder's sentence with the other 18 Park defendants who have been, or will be, sentenced in this case.

Honorable Paul A. Engelmayer
January 3, 2017
Page 6 of 6

## **CONCLUSION**

      For these reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range is warranted.

                                          Respectfully submitted,

                                          PREET BHARARA
                                          United States Attorney

                       By:       /s/_____
                                          James McDonald
                                          Max Nicholas
                                          Dina McLeod
                                          Assistant United States Attorneys
                                          (212) 637-2405 / -1565 / -1040

cc: Ira London, Esq.