**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**UNITED STATES OF AMERICA,**

      **-against-**

                                            **S10 15 Cr. 445 (PAE)**

**JONATHAN RODRIGUEZ, et al.,**

      **Defendant.**
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## JONATHAN RODRIGUEZ' PRE-TRIAL MOTIONS

Bruce D. Koffsky, Esq.
*Attorney for Defendant*
*Jonathan Rodriguez*

KOFFSKY & FELSEN, LLC
1150 Bedford Street
Stamford, CT 06905
(203) 327-1500
*bkoffsky@snet.net*

Joyce C. London, ESQ.
*Attorney for Defendant*
*Jonathan Rodriguez*

JOYCE C. LONDON, P.C.
59 Maiden Lane, 6th Floor
New York, NY 10038
(212) 964-3700
*jlondonlaw@aol.com*

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**UNITED STATES OF AMERICA,**

        **-against-**

                                              **S10 15 Cr. 445 (PAE)**

**JONATHAN RODRIGUEZ,**

        **Defendant.**
-------------------------------------------------------------x

<u>**PRELIMINARY STATEMENT**</u>

      This memorandum of law is submitted on behalf of defendant Jonathan Rodriguez and in support of the following pretrial motions:

      **First**, Mr. Rodriguez moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, to suppress and preclude any and all statements allegedly made by the defendant, upon the grounds that said statements were obtained in violation of the defendant's rights pursuant to the Fifth Amendment to the United States Constitution;

      **Second**, Mr. Rodriguez moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, to suppress and preclude any and all out of court identification evidence on the grounds that the photographic identifications used in this case were "unnecessarily suggestive and conducive to irreparable mistaken identification" thereby in violation of the defendant's Due Process rights under the Fifth and Fourteenth Amendments;

      **Third**, Mr. Rodriguez moves the Court to sever Overt Act "**r**" of Count One of the S-10 superseding indictment from the other overt acts and counts because it is improperly joined under Fed. R. Crim. Proc. 8(a).   In the alternative, the Court should use its discretion to sever Overt Act "**r**" of Count One under Fed. R. Crim. Proc. 14(a) because joinder would cause Mr. Rodriguez

3

undue prejudice.

**Finally**, Mr. Rodriguez seeks orders permitting him to join the motions of his co-defendants to the extent they are not inconsistent with motions submitted herein, to make such other and further motions as may be appropriate, and for such other and further relief which this Court may deem just and proper.


## ARGUMENT

### 1. THE COURT SHOULD GRANT AN ORDER SUPPRESSING STATEMENTS ALLEGEDLY MADE BY DEFENDANT AS ANY SUCH STATEMENTS WERE MADE AS A RESULT OF CUSTODIAL INTERROGATION WITHOUT THE ADMINISTRATION OF MIRANDA WARNINGS TO THE DEFENDANT


The government in this prosecution has indicated that they will attempt to offer in their case-in-chief, Mr. Rodriguez's oral statement to Detective Davis, made on September 2, 2008 at approximately 5:15 p.m., to wit: "[h]ow can you go on what little girls in the projects are saying that Bebo did something;"

Jonathan Rodriguez's post-arrest statements should be suppressed because he was interrogated in violation of his Fifth Amendment rights. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court "presumed that interrogation in certain custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically informed of his Miranda rights and freely decides to forgo those rights." New York v. Quarles, 467 U.S. 649, 654 (1984).    "Interrogation means 'either express questioning or its functional equivalent.'" United States v. DeVincenzi, 95-CR-325 (RSP/DNH),

4

1996 WL 252673 (N.D.N.Y. May 8, 1996) (quoting Rhode Island v. Innis, 446 U.S. 291, 300-301

(1980)); see also United States v. Montana, 958 F.2d 516, 518 (2d Cir. 1992) ("The police

interrogate 'whenever a person in custody is subjected to either express questioning or its

functional equivalent.'" Id. (quoting Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980)). Thus,

"[i]nterrogation includes both express questioning as well as 'any words or actions on the part of

the police (other than those normally attendant to arrest and custody) that the police should know

are reasonably likely to elicit an incriminating response from the suspect.'" Montana, 958 F.2d at

518 (quoting Innis 446 U.S. at 301). Accordingly, the Second Circuit has held that a law

enforcement agent's unsolicited suggestion to cooperate constitutes interrogation. Id. at 518-19.

A defendant's statements in response to a law enforcement agent's interrogation are

admissible at trial only if the government can demonstrate that the defendant knowingly and

voluntarily waived his *Miranda* rights:

> "Even absent the accused's invocation of the right to remain silent, the accused's
> statement during a custodial interrogation is inadmissible at trial unless the prosecution
> can establish that the accused "in fact knowingly and voluntarily waived [*Miranda*]
> rights" when making the statement. Butler, 441 U.S. at 373, 99 S. Ct. 1755. The waiver
> inquiry "has two distinct dimensions": waiver must be "voluntary in the sense that it
> was the product of a free and deliberate choice rather than intimidation, coercion, or
> deception," and "made with a full awareness of both the nature of the right being
> abandoned and the consequences of the decision to abandon it." Burbine, supra, at 421,
> 106 S. Ct. 1135." Berghuis v. Thompkins, 130 S. Ct. 2250, 2260 (2010). Indeed, though
> the Court has fine-tuned its *Miranda* jurisprudence in a manner that has limited its
> application to some extent, the "main purpose of *Miranda* [remains] to ensure that an
> accused is advised of and understands the right to remain silent and the right to
> counsel." Berghuis, 130 S. Ct. at 2261. Thus, the Court has reaffirmed Miranda's "core
> ruling that unwarned statements may not be used as evidence in the prosecution's case
> in chief.'" Berghuis, 130 S. Ct. at 2261 (quoting Dickerson v. United States, 530 U.S.
> 428, 443–444 (2000)).

As is made clear in the deposition testimony of Mr. Rodriguez, which is attached to the

Affirmation which accompanies this memorandum, at 4:30 a.m. on December 2, 2008, Mr.

5

Rodriguez was thrown to the floor, stomped on, handcuffed at gun-point, picked up, sat on his bed and inform him that he was being arrested for a homicide.   Mr. Rodriguez was then transported to the 40th Precinct for arrest processing.   At no time during his seizure and arrest did law enforcement advise Mr. Rodriguez of his Miranda rights nor did they ask him to waive his rights. Mr. Rodriguez emphatically indicated that he didn't want to speak with law enforcement but he did want to speak with his lawyer.   Although thousands of pages of discovery have been provided to the defendant in this case, not a single document references any *Miranda* warnings being given to Mr. Rodriguez.   Mr. Rodriguez's purported statement, made some 12 hours after his initial seizure, was obtained in violation of Mr. Rodriguez' rights under Miranda v. Arizona, 384 U.S. 436 (1966) and must be suppressed.   The defense respectfully requests that the Court order a pretrial hearing to explore and determine the facts and circumstances surrounding the statements alleged to have been made by Mr. Rodriguez.

**2. MOTION FOR AN ORDER SUPPRESSING ANY IDENTIFICATION EVIDENCE AT TRIAL, OR IN THE ALTERNATIVE, A MOTION FOR A WADE HEARING TO DETERMINE WHETHER THE GOVERNMENT'S PROPOSED WITNESS IDENTIFICATION TESTIMONY IS SUFFICIENTLY RELIABLE TO BE ADMITTED INTO EVIDENCE.**

On March 11, 2009, the Office of the Bronx District Attorney filed with the Bronx Supreme Court, a notice pursuant to New York Criminal Procedure Law § 710.30, indicating that they intended to offer evidence of the following:

b.   That Mr. Rodriguez was identified to Detective Waters as a person who committed the crime charged, by an individual, on September 28, 2008 at 3:00 a.m., by means of a single photo identification;

6

c.       That Mr. Rodriguez was identified to Detective Waters as a person who committed the crime charged, by an individual, on September 28, 2008 at 10:00 a.m., by means of a multiple photo identification;

d.       That Mr. Rodriguez was identified to Detective Waters as a person who committed the crime charged, by an individual, on December 2, 2008 at 5:00 p.m., by means of a single photo identification.

The government in Mr. Rodriguez's present prosecution has indicated that they will likewise attempt to offer said identification evidence in their case-in-chief.

Mr. Rodriguez submits that these procedures were conducted in an "unnecessarily suggestive" manner which was conducive to the likelihood of the irreparable mistaken identification of the defendant.   Of course, these photographic identification procedures were conducted outside the presence of the defendant or his defense counsel so the defenses' knowledge as to the surrounding facts are minimal.   But based on the review of police reports provided in discovery, our understanding of the validity and reliability of eyewitness identification and most importantly, the recantation of the eyewitness's identification of the defendant, the defense requests a hearing to develop a complete record of how the identification procedures followed in this case might have contributed to an inaccurate identification of the defendant.

The Supreme Court in Simmons v. United States, 390 U.S. 377 (1968), established the standard for judging photographic identification procedures.   An identification would be set aside only if the "procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification".   Simmons v. United States, supra at 384.   It is well established that "a defendant has a due process right not to be the object of suggestive police

identification procedures".   United States v. Concepcion, 983 F.2d 369 (2d Cir. 1992) (quoting

Simmons v. United States, 390 U.S. 377, 384 (1968)).   The "totality of the circumstances" must

be examined in determining whether police identification procedures were "unnecessarily

suggestive and conducive to irreparable mistaken identification" and thereby violative of due

process.   Stovall v. Denno, 388 U.S. 293 (1967).

    The linchpin for admissibility of identification testimony is reliability.   Manson v.

Brathwaite, 432 U.S. 98 (1977); United States v. Maldonado-Rivera, 922 F.2d 934 (2d Cir.1990).

There is no per se rule that the court conduct a hearing outside the jury's presence, though it may

be advisable and possibly required in some circumstances.   Watkins v. Sowders, 449 U.S. 341

(1981).   As the Supreme Court noted in Watkins, "the prudence of such a hearing has been

emphasized by many decisions in the Courts of Appeals, most of which have in various ways

admonished trial courts to use that procedure".   A hearing would be necessary to determine

admissibility since "in reviewing a due process challenge to the admission of identification

testimony, we must look at the facts of each case and the "totality of the surrounding

circumstances".   Manson v. Brathwaite, supra; Simmons v. United States, supra; Neil v. Biggers,

409 U.S. 188 (1972); United States v. Thai, 29 F.3d 785 (2d Cir. 1994).

    In Maldonado-Rivera, the Second Circuit explained that the analysis of whether a witness

is to be permitted to identify the defendant at trial normally requires a one-step or two-step inquiry.

Id, 922 F.2d at 973.   The first issue is "whether the pretrial identification procedures were unduly

suggestive of the suspect's guilt", and if so, then "the court must weigh the suggestiveness of the

pretrial process against factors suggesting that an in-court identification may be independently

reliable rather than the product of the earlier suggestive procedures".   Id, see also Manson v.

8

Braithwaite, supra at 114; United States v. Thai, supra at 807, Sims v. Sullivan, 867 F.2d 142 (2d Cir. 1989); Dickerson v. Fogg, 692 F.2d 238 (2d Cir. 1982).   The factors to be considered in assessing a witness's reliability against the corrupting effect of a suggestive procedure include (1) the witness's opportunity to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of any prior description by the witness, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation.   Neil v. Biggers, 409 U.S. 188 (1972).

The defense respectfully submits that the Court should order a pretrial hearing to explore and determine the facts and circumstances surrounding the pretrial identification of Mr. Rodriguez. In this way, the Court can be assured that the defendant's due process rights have been protected and the possibility of the defendant's mistaken identification can be properly evaluated.

**3. OVERT ACT "r" OF COUNT ONE SHOULD BE SEVERED OR DISMISSED BECAUSE RULE 8(a) PROHIBITS SUCH JOINDER ON THE FACTS HERE.[1]**

Federal Rule of Criminal Procedure 8(a) governs joinder of offenses in federal criminal cases.   Rule 8(a) permits joinder of separate offenses in one indictment *only* if (1) the offenses are of the same or similar character, (2) are based on the same act or transaction, or (3) if they are connected with or constitute parts of a common scheme or plan.   Where these three criteria are not present, counts are mis-joined, and the Court must sever.   *See United States v. Litwok*, 679

---

[1]      In order to sustain a conviction on a racketeering conspiracy, the government must prove two of the charged racketeering acts beyond a reasonable doubt.   Thus, for the government to rely on Overt Act (r) as one of the elements of the racketeering conspiracy, this racketeering act must be proven beyond a reasonable doubt as if it were a separate count.

F.3d 208, 216-217 (2d Cir. 2012) (reversing conviction because of district court's failure to sever counts where there was no factual or evidentiary link between fraud counts and tax evasion counts).

The racketeering conspiracy in this case charges two very separate and distinct types of offenses.   One set of offenses, charged in Overt Acts (a) through (q) concern acts of violence and the possession and distribution of heroin, crack and marijuana all in conjunction with a large group of individuals, all members or associates of an organization labeled 18 Park who lived and operated out of a discrete area of the South Bronx located in and around the Patterson Houses.   The government has alleged that these Overt Acts committed by various members of 18 Park all had the goal of maintaining and preserving the 18 Park territory in and around the Patterson houses. Overt Act (r), on the other hand references a charge related to the conduct of three of the former 18 Park individuals after they were arrested in connection with the other charges set forth in the indictment.   There was no 18 Park organization left on the street to be maintained and preserved.

None of the three permissible grounds for joinder identified in Rule 8(a) are present here. First, the offenses alleged in Overt Acts (a) through (q) are not "of the same or similar character" since there is no other allegation concerning the possession or distribution smokeable synthetic cannabinoids throughout the purported 10-year existence of the conspiracy.   Nor are the two offenses based on "the same act or transaction".   Overt Acts (a) through (q) all take place in or around the Patterson Houses in the Bronx with the exception of the two Overt Acts which take place in lower Manhattan or upstate New York and appear to be directly related to the narcotics trafficking activities of 18 Park as a whole.   Furthermore, Overt Act (r) occurs after the individuals belonging to or associated with 18 Park have all been arrested and 18 Park has been   shut down as a functioning entity.

10

Finally, the two offenses do not "constitute parts of a common scheme or plan." In order for two or more offenses to be joined under this exception, they must share a common pattern of conduct and must be interconnected in some significant way. In *United States v. Blakney*, 941 F.2d 114 (2d Cir. 1991), for example, the Second Circuit affirmed the district court's denial of a motion to sever gun and drug counts because the defendant sold both guns and drugs to the same customers and because he used drugs to pay for his gun purchases. *See id.* at 116. See also *United States v. Amato*, 15 F.3d 230, 236 (2d Cir. 1994) (permitting joinder of gun count with RICO, loan sharking, and murder counts because "evidence offered to prove the gun count . . . was interconnected and overlapping with the evidence offered to prove the [other counts]."); *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989) (two separate conspiracies were properly joined where several acts of both conspiracies shared a common purpose and there was an overlap of participants and acts between both conspiracies).

On the other hand, where charged offenses did not sufficiently share a common scheme or plan, joinder was improper. In *United States v. Tubol*, 191 F.3d 88 (2d Cir. 1999), for example, the Second Circuit reversed the decision of a district court judge to allow the joinder of two robberies, one of a bank and one of an appliance store. The Circuit pointed out that the robberies were committed at different times, targeted different victims, and, most importantly, failed to exhibit the same or similar *modus operandi*. *See id.* at 94-95.

The offenses in this case are inherently different from each other. The possession and distribution of synthetic cannabinoids at the Metropolitan Correction Center is substantively different from the street possession and distribution of crack, cocaine and heroin on the streets. Nor does the same evidence support both offenses. *See e.g. id.* at 95 ("Joinder is proper where

the same evidence will support both of the joined counts.").   To prove Overt Acts (a) through (q), the government will rely upon police reports, cooperating witnesses, surveillance reports, medical records, wiretapped evidence, and facebook evidence *inter alia*.   To establish Overt Act (r), while the government may rely on some cooperator testimony, there will be no police reports, surveillance reports or facebook evidence. Rather, the evidence is likely entail reports from correction officers and/or testimony regarding corrupt correction officers within the correctional institution.    This is an insufficient connection to justify joinder in this case.

Because Federal Rule of Criminal Procedure 8(a) prohibits the joinder of Overt Act (r) with the remaining Overt Acts and counts in the indictment, the Court should sever Overt Act (r) from the indictment.

**4.   EVEN IF THE COURT PERMITS JOINDER UNDER RULE 8(a), OVERT ACT "r" SHOULD BE SEVERED FROM THE REMAINING OVERT ACTS AND COUNTS PURSUANT TO RULE 14(a) BECAUSE OF THE SUBSTANTIAL PREJUDICE TO MR. RODRIGUEZ.**

Overt Act "**r**" should be severed from the other Overt Acts because it is not properly joined under Federal Rule of Criminal Procedure 8(a).   However, even if the Court were to conclude that the joinder is correct, Overt Act (r) should still be severed to avoid undue prejudice.   Federal Rule of Criminal Procedure 14(a) permits severance when "joinder of offenses ... appears to prejudice a defendant," and here the prejudice would be substantial.

The inclusion of unrelated Overt Act (r) at trial would inject the proceedings with an unnecessarily prejudicial element.   For all the other Overt Acts, namely Overt Acts (a) through (q), the jury must analyze the sufficiency of the government's evidence and assess the credibility of the government witnesses.   To reach a verdict on the Overt Act relating to the possession and

distribution of smokeable synthetic cannabinoids at the MCC, the jury is likely to learn about the illegal conduct of family members and friends of Mr. Rodriguez and his co-defendants at the same trial and/or the illegal conduct of correction officers within the correctional institution.   Through this Overt Act, the jury will also learn that Mr. Rodriguez and his co-defendants are in custody. Thus through Overt Act "r", the jury will learn far more information about Mr. Rodriguez - much of it negative, given the circumstances - than a jury which was only adjudicating Overt Acts (a) through (q) of Count One and the other counts of the indictment would learn.

Where such danger of prejudice exists, courts have not been reluctant to order severance of counts under Rule 14(a).   For example in *United States v. Harris*, 805 F.Supp. 166 (S.D.N.Y. 1992), the defendant was charged with numerous counts of corporate bank fraud relating to his activities as the C.E.O. of a company.   In addition, the defendant was also charged with a single count of personal bank fraud concerning false statements in a personal loan application.   The defendant sought to sever the personal bank fraud charge from the other counts.   Although the court determined that the two offenses barely passed the "same or similar character" test of Rule 8(a), it concluded that there was no other compelling reason to join the offenses.   Important for the court was the fact that evidence of one offense would not be admissible as proof of the other under Federal Rule of Evidence 404(b) because the offenses lacked similarity.   *See Harris*, 805 F.Supp. at 183-184.   These considerations, combined with the potential for jury confusion and cumulative use of evidence caused the court to grant severance under Rule 14(a).   *Id.; see also United States v. Villanueva-Madrid*, 302 F.Supp.2d 187 (S.D.N.Y. 2003) (granting severance of narcotics laundering counts from bank and wire fraud counts due to substantial spillover prejudice).

13

F.R.E 404(b)'s underpinning is a similarity in offenses, and none exists here.   *See Harris*, 805 F.Supp. at 183-184 ("The adjective 'similar' does not appear in the rule, but the courts universally recognize the requirement, which is grounded in the concept of relevance.") Accordingly, the only way for the government to introduce the inflammatory evidence of Mr. Rodriguez' conduct in custody is by joining the Overt Acts.

An additional and related concern is the question of Mr. Rodriguez testifying.   He may well decide not to testify about the Overt Acts related to the affairs of the 18 Park organization in and around the South Bronx, but feel compelled to explain his conduct while in custody and awaiting the trial on all the other Overt Acts and counts.

As the Second Circuit has pointed out, "the risk to the defendant . . .  is considerable" when unrelated offenses are joined: "[T]he defendant may become embarrassed or confounded in presenting separate defenses, [and] the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged."   *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978) (citing *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964).   Nor are countervailing considerations such as judicial economy present here that outweigh the significant prejudice of joinder.   Where offenses are connected, judicial efficiency is served by a joint trial because "the government should not be put to the task of proving what is essentially the same set of facts more than once."   Halper, 590 F.2d at 430.   But where offenses are different and distinct, as here, and the government is required to prove two unrelated and unconnected charges, such considerations do not exist.

Because of the significant risk of prejudice to Mr. Rodriguez if Overt Act (r) of Count One is not severed, coupled with the lack of compelling reasons to retain this Overt Act in Count One

14

of the indictment, the Court should, pursuant to Rule 14(a), sever Overt Act "r".

**5.     THE DEFENDANT SEEKS TO JOIN IN THE MOTIONS OF HIS CO-DEFENDANTS TO THE EXTENT THAT THEY ARE NOT INCONSISTENT WITH THE MOTIONS ADVANCED HEREIN**

Defendant Rodriguez respectfully requests that he be permitted to join in the motions of

his co-defendants insofar as such motions are not inconsistent with the motions advanced herein.

**6.     THE DEFENDANT SEEKS TO MAKE SUCH OTHER AND FURTHER MOTIONS AS MAY BE APPROPRIATE AND NECESSARY**

Defendant Rodriguez respectfully requests that he be permitted to make such other and

further motions as may be appropriate and necessary.

15

## **CONCLUSION**

For all the reasons set forth herein, the relief requested should be granted.

DATED:     White Plains, New York
           May 22, 2017

                            RESPECTFULLY SUBMITTED,
                            THE DEFENDANT,
                            **JONATHAN RODRIGUEZ**

| | |
|---|---|
| _/s/_____ | __/s/_____ |
| Bruce D. Koffsky, Esq. | Joyce C. London, ESQ. |
| *Attorney for Defendant* | *Attorney for Defendant* |
| *Jonathan Rodriguez* | *Jonathan Rodriguez* |
| | |
| KOFFSKY & FELSEN, LLC | JOYCE C . LONDON, P.C. |
| 1150 Bedford Street | 59 Maiden Lane, 6th Floor |
| Stamford, CT 06905 | New York, NY 10038 |
| (203) 327-1500 | (212) 964-3700 |
| *bkoffsky@snet.net* | *jlondonlaw@aol.com* |